## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDWARD WERNECKE, individually, MICHELLE WERNECKE, individually, KW, a minor,by and through her parents and legal guardians, EDWARD WERNECKE and MICHELLE WERNECKE, JW, a minor, by and through his parents and legal guardians, EDWARD WERNECKE and MICHELLE WERNECKE , JW, a minor by and through his parents and legal guardians, EDWARD WERNECKE and MICHELLE WERNECKE, and JW, aminor by and through his parents and legal guardians, EDWARD WERNECKE and MICHELLE WERNECKE , | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION No.: |
| | § § § | JURY TRIAL DEMANDED |
| | § § § § § § § § § | PLAINTIFFS' REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY  JUDGMENT, ACTUAL DAMAGES NOMINAL DAMAGES, PUNITIVE DAMAGES, ATTORNEY'S FEES AND COSTS FOR CONSTITUTIONAL VIOLATIONS |
| Plaintiffs, | § § | |
| vs. | § § | |
| TEXAS DEPARTMENT OF FAMILY and PROTECTIVE SERVICES, LINDA KIM GARCIA, in her individual capacity, STELLA KLEIN, in her | § § § § § § | |

1

**individual capacity,** §
**CLAIRA TRAINER, in her** §
**individual capacity,** §
**DIANE BONNEAU, in her** §
**individual capacity,** §
**KEVIN SULLIVAN, in his** §
**individual capacity,** §
**CINDI MORALES, in hER** §
**individual capacity** §
**NUECES COUNTY,** §
**DEPUTY CONSTABLE,** §
**GARCIA DOE, in his** §
**individual capacity,** §
**DEPUTY CONSTABLE,** §
**CARRION ROE, in his** §
**individual capacity,** §
    **Defendants.**

---

## PLAINTIFFS' ORIGINAL COMPLAINT

_____

_____

**TO THE HONORABLE JUDGE OF SAID COURT:**

EDWARD WERNECKE, individually, MICHELLE WERNECKE, individually, KW, a minor by and through her parents and legal guardians, EDWARD WERNECKE and MICHELLE WERNECKE, JW, a minor, by and through his parents and legal guardians, EDWARD WERNECKE and MICHELLE WERNECKE , JW, a minor by and through his parents and legal guardians, EDWARD WERNECKE and MICHELLE WERNECKE, and JW, aminor by and through his parents and legal guardians,EDWARD WERNECKE and MICHELLE WERNECKE, (all hereinafter collectively referred to as "Plaintiffs") complain

2

of TEXAS DEPARTMENT OF FAMILY and PROTECTIVE SERVICES ("DFPS"), LINDA KIM GARCIA ("Garcia"), in her individual capacity, STELLA KLEIN ("Klein"), in her individual capacity, CLAIRA TRAINER ("Trainer"), in her individual capacity, DIANE BONNEAU ("Bonneau"), in her individual capacity, KEVIN SULLIVAN ("Sullivan") in his individual capacity, CINDI MORALES ("Morales") in her individual capacity, NUECES COUNTY ("Nueces"), DEPUTY CONSTABLE, GARCIA DOE ("Deputy Doe"), in his individual capacity, DEPUTY CONSTABLE, CARRION ROE ("Deputy Roe"), in his individual capacity, (all hereinafter be collectively referred to as "Defendants") and, say as follows:

## I.

## NATURE OF SUIT GENERALLY
## AND GENERAL NATURE OF RELIEF SOUGHT

1.1.   This civil action is necessary because of Defendants' malicious and deliberate interference with the family integrity of the Plaintiffs.  Defendants have disregarded the Constitution of the United States of America and by their conduct, policy, practice and custom have violated the fundamental rights of all Americans – the right of privacy and the right to the love, nurture and affection of Plaintiffs' family. The right of a family to remain together without the coercive interference of the government is a fundamental right protected by the Constitution.

3

1.2.    Defendants have violated the procedural and substantive due process rights guaranteed under the Fourteenth Amendment.  Defendants' conduct against Plaintiffs' family is outrageous, egregious and shocks the contemporary conscience. Defendants' conduct is arbitrary and represents an abusive, irrational, malicious and oppressive use of government power against Plaintiffs' family.  The Defendants have violated the fundamental right of Plaintiffs to fair procedures before having children removed from their family. Freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment of the Constitution. In 2005, it was clearly established that the integrity of the family unit in America was protected by the Constitution.

1.3.   This is a suit for a preliminary and permanent injunction, Declaratory Judgment, actual damages, nominal damages, punitive damages and to recover attorney's fees and costs.  Plaintiffs seek a Declaratory Judgment that the policies, customs, practices, usages, rules, procedure and conduct of the Defendants are in violation of the United States Constitution.  Plaintiffs seek a preliminary and permanent injunction from the Court prohibiting the illegal and unlawful acts of the Defendants.

1.4.   This suit arises because of the unconstitutional and illegal actions of the Defendants in enforcing a policy, practice, custom, usage, rule or procedure and putting such policy, practice, custom, usage, rule or procedure into effect

against the Plaintiffs.  Plaintiffs' constitutional rights guaranteed to Plaintiffs by, *inter alia*, the Fourth and Fourteenth Amendment to the United States Constitution, have been violated by the policy, practice, custom, usage, rule, procedure and conduct of the Defendants as enforced against the Plaintiffs as stated herein.

1.5.    Plaintiffs have a clearly protected and clearly established right under the Fourth and Fourteenth Amendments to the United Stated Constitution to live free from the government's interference in the integrity of Plaintiffs' family. Plaintiffs have a clearly established Constitutional Right to a fair process prior to removal of children from Plaintiffs' family. The policies, practices, customs, usages, rules, procedures, and conduct of the Defendants violate the Constitutional guarantees to the Plaintiffs and constitute a deprivation under the Fourth and Fourteenth Amendments of the fundamental right of the Plaintiffs to associate with each other, to live as a family, and nurture and encourage each other as a family unit.

1.6.    The policy, practice, custom, rule, procedure and conduct of the Defendants as enforced against the Plaintiffs in order to deprive the Plaintiffs of their rights under the Fourth and Fourteenth Amendments, violate 42 U.S.C. § 1983.

1.7.    Defendants violated clearly established law.

5

1.8.    Defendants had fair notice that Defendants' conduct was clearly unlawful.

1.9.    Defendants conduct was "reckless" and constitutes "callous indifference" to the legal rights of the Plaintiffs.

1.10.   Plaintiffs seek injunctive relief, a Declaratory Judgment of this Court that the policy, practice, custom, usages,  rules, procedures and conduct of the Defendants is a violation of the Fourth and Fourteenth Amendments and the penumbra of liberty, association, equal protection, and due process rights protecting the legal rights of the Plaintiffs. Plaintiffs seek actual damages. Plaintiffs also seek punitive damages in an amount to be awarded by the Jury and nominal damages for the conduct and actions of the Defendants.  Plaintiffs will request the Court to enter a Declaratory Judgment that the policies, practices, customs, usages, rules, procedures and conduct of the Defendants violate clearly established law.

1.11.   Plaintiffs seek a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983, that the policy, practice, custom, usages, rules, procedure and conduct of the Defendants is a violation of the Fourth and Fourteenth Amendments, and of association, liberty, equal protection, and due process rights guaranteed to citizens and Plaintiffs under the Fourth and Fourteenth Amendments of the U.S. Constitution.

1.12.  Plaintiffs seek the recovery of punitive damages against the individual Defendants for the clearly unlawful actions of the individual Defendants and for the individual Defendants' "reckless" conduct, and their "callous indifference" which interfered with and harmed the clearly established legal rights of the Plaintiffs.

1.13.  Plaintiffs seek the recovery of nominal damages from all Defendants.

1.14.  Plaintiffs seek recovery of actual damages.

1.15.   Plaintiffs seek and ask the Court to enter an injunction to stop Defendants' unlawful conduct and prohibit Defendants from returning to their old unlawful ways.

1.16.  Plaintiffs seek the recovery of their attorney's fees and costs pursuant to 42 U.S.C. § 1988 and recovery of all court costs and expenses incurred to bring this action.

## II.

## THE PARTIES

## A. The Plaintiffs

2.1.    KW is a minor, under the age of eighteen (18) and is the natural born daughter of Edward and Michelle Wernecke, her parents.

2.2.    Edward Wernecke is the father of KW, JW, JW and JW and is married to Michelle Wernecke. Edward Wernecke is an individual over the age of eighteen (18) and resides in Nueces County, Texas. Edward Wernecke brings this suit in his representative capacity for his children, KW, JW, JW and JW, and in his own capacity.

2.3.    Michelle Wernecke is the mother of KW, JW, JW and JW and is married to Edward Wernecke. Michelle Wernecke is an individual over the age of eighteen (18) and resides in Nueces County, Texas. Michelle Wernecke brings this suit in her representative capacity for her children, KW, JW, JW and JW, and in her own capacity.

2.4.    JW is a minor, under the age of eighteen (18) and is the natural born son of Edward and Michelle Wernecke.

2.5.    JW is a minor, under the age of eighteen (18) and is the natural born son of Edward and Michelle Wernecke.

2.6    JW is a minor, under the age of eighteen (18) and is the natural born son of Edward and Michelle Wernecke.

**B. The Defendants**

8

2.7.     The   Texas   Department   of   Family   &   Protective   Services ("DFPS") is a department of the State of Texas. Plaintiffs seek equitable relief and nominal damages against this Defendant. Plaintiffs request that Service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.8.   Defendant, Linda Kim Garcia ("Garcia") was at all material times a state actor working as a government official for DFPS.  This Defendant is sued  in her individual capacity. The actions of this Defendant were done under color of law. Plaintiffs request that service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.9.     Defendant, Stella Klein ("Klein") was at all material times a state actor working as a government official for DFPS.  This Defendant is sued  in her individual capacity. The actions of this Defendant were done under color of law. Plaintiffs request that service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.10.     Defendant, Claira Trainer ("Trainer") was at all material times a state actor working as a government official for DFPS.  This Defendant is sued  in her individual capacity. The actions of this Defendant were done under color of law. Plaintiffs request that service of process be issued and served on this

Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.11.   Defendant, Diane Bonneau ("Bonneau") was at all material times a state actor working as a government official for DFPS.  This Defendant is sued  in her individual capacity. The actions of this Defendant were done under color of law. Plaintiffs request that service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.12.   Defendant, Kevin Sullivan ("Sullivan") was at all material times a state actor working as a government official for DFPS.  This Defendant is sued  in his individual capacity. The actions of this Defendant were done under color of law. Plaintiffs request that service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.13    Defendant, Cindi Morales ("Morales") was at all material times a state actor working as a government official for DFPS.  This Defendant is sued  in her individual capacity. The actions of this Defendant were done under color of law. Plaintiffs request that service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.14.   Defendant, Nueces County, is a political subdivision on the State of Texas and is a municipality for purposes of 42 U.S.C. §1983. Plaintiffs request that service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.15.   Defendant, Deputy Garcia Doe ("Doe"), is a constable deputy or law enforcement officer employed by Nueces County and working in constable Precinct 5. (The full name of this deputy is unknown; thus, the name used is "Doe.")  This Defendant was working as a government official for Nueces County. This Defendant is sued  in his individual capacity. The actions of this Defendant were done under color of law. Plaintiffs request that service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

2.16.   Defendant, Deputy Carrion Roe ("Roe"), is a constable deputy or law enforcement officer employed by Nueces County and working in constable Precinct 5. (The full name of this deputy is unknown; thus, the name used is "Roe.").   This Defendant was working as a government official for Nueces County.  This Defendant is sued  in his individual capacity. The actions of this Defendant were done under color of law. Plaintiffs request that service of process be issued and served on this Defendant if Defendant fails to waive service under Federal Rule of Civil Procedure 4(d).

11

# III.

## JURISDICTION

3.1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §
1331 and § 1343 for the reason that this action arises under the Constitution and
laws of the United States and is an action to recover actual, nominal and punitive
damages for injury to a person because of a deprivation of a right or privilege of a
citizen of the United States and is an action for declaratory relief concerning a
policy, practice, custom, and usage in violation of 42 U.S.C. § 1983.  This action
arises, inter alia, under the Fourth and Fourteenth Amendments to the United States
Constitution, 42 U.S.C.§1983, and 28 U.S.C. § 2201 and § 2202.

3.2.    In addition to being a suit for recovery of actual, nominal and punitive
damages, this is a suit for a Declaratory Judgment pursuant to 28 U.S.C. §§ 2201
and 2202 and for an injunction.  Plaintiffs seek injunctive relief, actual, nominal
and punitive damages, and declaratory relief that the policies, practices, customs,
usages, rules, and procedures of the Defendants are in violation of the law and a
preliminary and permanent injunction to stop Defendants unlawful conduct. The
Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 is implemented through Rule 57
of the Federal Rules of Civil Procedure.

3.3.    This Court is authorized to grant Plaintiffs' prayer for relief regarding
costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

3.4.    This Court has supplemental jurisdiction over any and all claims arising under state law by virtue of 28 U.S.C. § 1367.

3.5.    Each and all of the acts alleged herein were done by Defendants, and each of them, as individuals, under the color and pretense of the law, statutes, ordinances, regulations, practices, customs, and uses, and in the capacities stated herein.

3.6.    In their individual capacities, the Defendants  acted under color of law and were public officials acting under the color of law.  The individual Defendants are sued in their individual capacities for their unlawful actions and conduct taken under color of law.

3.7.    DFPS is sued in its official and public entity capacity.

3.8.    Plaintiffs seek punitive damages against the individual Defendants for their "reckless" conduct and "callously indifference" to the legal rights of the Plaintiffs.

3.9.    Plaintiffs' claims for punitive damages against DFPS and Nueces County are barred as a matter of law, and thus Plaintiffs may seek punitive damages against these Defendants only as an effort to change existing law.

3.10.    All of the actions and conduct of the individual Defendants herein were taken in furtherance of, and pursuant to, policies adopted by either DFPS or Nueces County, and those Defendants adopt approve, endorse, and ratify the

actions and conduct of the individual Defendants as described herein as being taken in furtherance of and pursuant to the policies of DPFS or Nueces County.

3.11.   The actions and conduct of the Defendants taken against the Plaintiffs were actually caused by the policies of the DFPS or Nueces County.

## IV.

## VENUE

4.1.   This Court has venue of this action pursuant to 28 U.S.C. § 1391.

4.2.   The actions and conduct complained of herein arose within the jurisdictional and venue limits of this Court in that they arose within the area encompassing the United States District Court for the Southern District of Texas, Corpus Christi Division.  The Defendants and the actions complained about by the Defendants herein all occurred within either Nueces or Harris County, Texas.

4.3.   Venue and jurisdiction is proper in this Court.

## V.

## STATEMENT OF FACTS

5.1   On or about January 7, 2005, KW was admitted to the hospital and diagnosed with HL.

5.2   KW's assigned doctor was Dr. Nejemie Alter.

14

5.3     Dr. Alter gave KW and her parents options for treatment of the disease.

5.4     KW and her parents chose a chemotherapy treatment as explained to them by Dr. Alter.

5.5     At some point Dr. Alter told KW and her parents that a blood transfusion may be necessary.

5.6     KW and her parents told Dr. Alter that they had a religious objection to use of ordinary blood in any transfusion and offered alternatives to the use of the public blood supply.

5.7     KW and her parents requested the use of Katie's own blood or the blood of her mother or other relative as an alternative to the use of public blood unless the use of public blood was necessary to save KW's life.

5.8     On or about April 7, 2005, Dr. Alter or a member of his staff at his direction filed a complaint with the Texas Department of Family and Protective Services because Edward Wernecke and Michelle Wernecke had requested an alternative source of blood for any transfusion KW might need.

5.9     On or about April 7, 2005, a worker from the Texas Department of Family and Protective Services phoned Michelle Wernecke and verbally threatened to remove the Wernecke's other children from their home if the Werneckes did not agree to a ordinary transfusion for KW using public blood.

15

5.20    Under duress from the threat from Texas Department of Family and Protective Services, Michelle Wernecke consented to an ordinary blood transfusion for KW using blood from the public supply.

5.21    In April of 2005, KW had a diagnostic test done to determine if the (disease) was still present. It was not.

5.22    In early May of 2005, Edward and Michelle Wernecke sought a second medical opinion on what treatment Katie would need after the chemotherapy treatments KW had received.

5.23    On May 11, 2005, KW and Werneckes received a medical report which stated that there were no abnormal areas in Katie's body.

5.24    On May 12, 2005, Edward Wernecke took KW to see Dr. Alter to have a blood sample done and to flush her port.

5.25    While at Dr. Alter's office on May 12, 2005, Dr. Alter pressured Edward Wernecke to consent to radiation treatments of KW. Edward Wernecke questioned Dr. Alter's insistence that radiation treatments needed to begin on KW, and decided that he would need to get a second medical opinion on the treatment options that are available. At this time there was no active cancer and the mass was entirely necrossed so the need for radiation on KW was not clear.

5.26    While at Dr. Alter's office on May 12, 2005, a social worker working for Dr. Alter was lingering outside the doctor's office.  Her name was Laura Esparza.  She opened the door of the exam room and asked Dr. Alter if everything is ok.  She was waiting on a cue to call the Texas Department of Family and Protective Services.

5.27    During the middle of May of 2005, workers from the Texas Department of Family and Protective Services kept calling Michelle Wernecke and pressuring her to give consent to treat KW with radiation. The Texas Department of Family and Protective Services workers threatened Michelle Wernecke that her children would be taken if she did not give the consent to treat KW with radiation.

5.28    On or about May 24, 2005, Edward Wernecke took KW to see Dr. Judith Mullins.  Dr. Mullins evaluated KW and recommended that she have both chemotherapy and radiation treatment. She also expressed disagreement with the methods and treatment given by Dr. Alter to cancer patients in the past and said that was the reason that she no longer worked with Dr. Alter.

5.29    On or about May 26, 2005, Laura Esparza, a social worker from Dr. Alter's office called Edward Wernecke and wanted to know which doctor was going to do the radiation treatments. He said that he needed a third opinion since Dr. Alter and Dr. Mullins did not agree.

17

5.30    On or about the same time, Kim Garcia with the Texas Department of Family and Protective Services phoned Michele Werrnecke. Ms. Wernecke referred Ms. Garcia to the Werneckes' legal counsel, Luis J. Corona, Esq.

5.31    On May 27, 2005, Texas Department of Family and Protective Services phoned Michelle Wernecke and said that the Werneckes had ten days from the date of the letter sent by Dr. Alter to the Texas Department of Family and Protective Services to decide on and implement a treatment plan for KW. Michelle again referred them to the Werneke's attorney, Luis J. Corona, Esq.

5.32 Later on May 27, 2005, the Texas Department of Family and Protective Services called and gave the Werneckes a deadline to decide on KW's treatment of May 31, 2005.  Again, the Texas Department of Family and Protective Services was referred to the Werneckes' legal counsel, Luis J. Corona, Esq.

5.33    On June 1, 2005, the Texas Department of Family and Protective Services filed action 05-60955-5 "In the Interest of KMW " in the County Court of Law No. 5 of Nueces County.

5.34    The lawsuit filed by Texas Department of Family and Protective Services sought immediate removal of KW and custody by the government over KW.

18

5.35    The law suit sought a permanent termination of the parent child relationship between KW and her parents, Edward and Michelle Wernecke.

5.36    The Texas Department of Family and Protective Services did not seek an adversary hearing before seeking an immediate order of removal of KW and custody of KW with the Texas Department of Family and Protective Services.

5.37    No exigent circumstances existed that would justify removing KW without notice to her parents and an opportunity for an adversary hearing before KW was removed from her family.

5.38    No immediate danger existed that would justify removing KW without notice to her parents and an opportunity for an adversary hearing before KW was removed from her family.

5.40    No safety or health issues existed that would justify removing KW without notice to her parents and an opportunity for an adversary hearing before KW was removed from her family.

5.41    The immediate removal of KW from her family without notice to her parents and the opportunity for an adversary hearing was based on an affidavit by Linda Kim Garcia executed on June 1, 2005.

5.42     The affidavit of Linda Kim Garcia was false, contained fraudulent statements, and was intentionally written to create the false impression that KW's immediate health and safety were in danger.

5.43     Defendant, Kevin Sullivan, participated in reviewing the information in the Garcia affidavit and concurred in the false statements and actions for immediate removal of KW from her family without an adversary hearing.  Kevin Sullivan had the authority to stop Kim Garcia's actions and did not do so.  Kevin Sullivan was Garcia's supervisor.  Kevin Sullivan agreed with the unlawful actions of Kim Garcia and the Texas Department of Family and Protective Services.

5.44     Without justification or cause, on June 1, 2005, the Texas Department of Family and Protective Services, at the insistence of Kim Garcia and Kevin Sullivan, caused a lawsuit to be filed against the Plaintiffs and obtained by false evidence and false testimony an Order for the immediate removal of KW from her family and that placed KW in the custody and control of the Texas Department of Family and Protective Services.

5.45 KW was removed from her family by Kim Garcia on June 4, 2005.

5.46     While in the custody of the Texas Department of Family and Protective Services various medical procedures were performed on KW without her consent or the consent of her parents.  Many of the medical

20

procedures were experimental in nature and caused KW great pain and suffering, and permanent physical harm.

5.47   KW was removed from her family and not returned to her family until November of 2005.

5.48   KW was placed in a foster home in Houston, Texas and not allowed to have contact with her family.

5.49   KW was cut off from having the support and contact from her family during her period of unlawful removal by the protective services Defendants.

5.50   Despite clear and convincing evidence to the contrary, during the time of KW's unlawful removal, the protective services Defendants continued a pattern and practice of relying on false and fraudulent evidence to keep KW in their custody. Defendant, Stella Klein was the individual making all health care and other decisions for KW during her time of removal from her family. Upon information and belief, Stella Klein is not licensed as a medical doctor or otherwise trained in the field of medicine or oncology and, thus, is incompetent to make such decisions.

5.51   Stella Klein unlawfully participated in restricting contact between KW and her family during the time of her removal and authorized medical treatment that was not in KW's interest.

21

5.52    Stella Klein deliberately attempted to interfere with any contact between KW and her family during the time of KW's removal.

5.53    KW's family and parents were forced to retain legal counsel to dispute the unfounded charges made against them by the protective services Defendants and to litigate with the protective services Defendants to secure KW's return to her family, including an appeal to the Texas Supreme Court.

5.54    Edward and Michelle Wernecke incurred substantial legal fees to secure KW's release from her unlawful custody by the protective services Defendants.

5.55    Defendant, Cindi Morales, was a supervisor for the Texas Department of Family and Protective Services and directly supervised and reviewed the files and facts of the DFPS's case, and granted approval of the unlawful actions taken by the employees of the  Texas Department of Family and Protective Services.

5.56    Defendant, Diane Bonneau, was a supervisor for the Texas Department of Family and Protective Services and directly supervised and reviewed the files and facts of the DFPS's case, and granted approval of the unlawful actions taken by the employees of the  Texas Department of Family and Protective Services.

22

5.57    On June 1, 2005, Kim Garcia and two deputy constables from precinct 5 of Nueces County, Defendant Garcia Doe and Defendant Carrion Roe, went to the home of the Plaintiffs.  Kim Garcia was looking for KW in order to seize her and remove her from her family.

5.58    The Defendants did not have a search warrant to search the Plaintiffs home.

5.59    Edward Wernecke was home and refused to consent to a search of his home.

5.60   KW was not at the Plaintiffs home.

5.61    Despite the absence of a search warrant, the deputy constables from Precinct 5 pushed the door open and began a search of the Plaintiffs' home.

5.62    The constables had no lawful right to enter or search the Plaintiffs' home.

5.63    The protective services employees followed the deputies into the Plaintiffs' home.

5.64    Kim Garcia was angry that KW was not home and wanted to retaliate against Plaintiffs.

5.65    Edward Wernecke was ordered to unlock all doors and permit the Defendants to search all areas of Plaintiffs' home. Defendants took pictures of all areas of Plaintiffs' home.

5.66    Without a court order or any justification, Kim Garcia and the constable deputies seized and removed Plaintiffs, JW, JW and JW from the home.

5.67    Defendants had no order permitting the removal of Plaintiffs, JW, JW and JW from the home by the Defendants.

5.68    No exigent circumstances existed justifying the Plaintiffs, JW, JW and JW being removed from the home by the Defendants.

5.69    No dangerous condition existed justifying the Plaintiffs, JW, JW, and JW being removed from the home by Defendants.

5.70    Kim Garcia said that if Edward and Michelle would turn over KW to her that the Werneckes could have their boys returned to them.

5.71    The sole reason that Defendants took the Wernecke boys on June 1, 2005 was to use them as a bargaining chip to negotiate the surrender of KW to the Defendants.

5.72    In addition to violating federal law, the actions of Kim Garcia and the constable deputies on June 1, 2005 violated the clearly established law in the Texas family code, and the policies of the Texas Department of Family

24

and Protective Services because no dangerous or exigent circumstances existed which would justify the removal of the Wernecke boys from their home on June 1, 2005.

5.73   Before Kim Garcia instructed the deputy constables to seize the boys on June 1, 2005, she conferred with and obtained the approval of her supervisor, Defendant, Claira Trainer.   Trainer acquiesced in the unlawful actions of Kim Garcia and the deputy constables.

5.74   It is the policy of Nueces County that its constables shall follow the instructions of case workers and employees of the Texas Department of Family and Protective Services.

5.75   Deputies Garcia and Carrion of precinct 5 of Nueces County were following Nueces County policy on June 1, 2005 when they entered the Plaintiffs' home without a warrant, searched the home and seized JW, JW and JW and placed them in the custody of Kim Garcia and the Texas Department of Family and Protective Services.

5.76   It is the policy of the Texas Department of Family and Protective Services to give instructions to law enforcement officers for removal of children from their home.

5.77    JW, JW and JW were separated from their dad and mom until June 10, 2005 after the Judge ordered the Texas Department of Family and Protective Services to return the boys to their parents.

5.78    On June 2, 2005, Kim Garcia executed and filed a false affidavit with the County Court at Law No. 5 in Cause 05-60955-5 in which she urged that the Wernecke boys remain in the custody of the Texas Department of Family and Protective Services.

5.79    On June 3, 2005, the Texas Department of Family and Protective Services filed an Amended Petition in Cause No. 05-60955-5 seeking to permanently terminate the parent-child relationship between Edward Wernecke and Michelle Wernecke, and their three boys, JW, JW and JW.

## CAUSES OF ACTION

## VI.

## COUNT I - FOURTEENTH AMENDMENT

6.1.   Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

6.2.   Defendants violated Plaintiffs' Fourteenth Amendment rights to family integrity, family privacy, liberty, and procedural and substantive due process.

6.3.    Defendants' malicious and deliberate interference with the family integrity of the Plaintiffs violates the Fourteenth Amendment.  Defendants have disregarded the Constitution of the United States of America and by their conduct, policy, practice and custom have violated the fundamental rights of all Americans – the right of privacy and the right to the love, nurture and affection of Plaintiffs' family. The right of a family to remain together without the coercive interference of the government is a fundamental right protected by the Fourteenth Amendment of the Constitution.

6.4.    Defendants have violated the Plaintiffs' procedural and substantive due process rights guaranteed under the Fourteenth Amendment.  Defendants' conduct against Plaintiffs' family is outrageous, egregious and shocks the contemporary conscience. Defendants' conduct is arbitrary and represents an abusive, irrational, malicious and oppressive use of government power against Plaintiffs' family.

6.5.    The Defendants have violated the fundamental right of Plaintiffs to fair procedures before having children removed from their family.

6.6.    Freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment of the Constitution. In 2005, it was clearly established that the integrity of the family unit in America was protected by the Constitution.

6.7.    Plaintiffs have a clearly protected and clearly established right under the Fourteenth Amendment to the United Stated Constitution to live free from the government's interference in the integrity of Plaintiffs' family. The policies, practices, customs, usages,  rules, procedures, and conduct of the Defendants violate the Constitutional guarantees to the Plaintiffs and constitute a deprivation under the Fourteenth Amendment of the fundamental right of the Plaintiffs to associate with each other, to live as a family and nurture and encourage each other as a family unit.

6.8.    The law applicable to these rights was clearly established in 2005 when the Defendants acted in violation of the law.

6.9.    Defendants had fair notice that their conduct as described herein was a violation of the law in 2005.

6.10.    No reasonable official would violate clearly established law.

## VII.

## COUNT II - FOURTH AMENDMENT

7.1.    Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

7.2.   Defendants violated Plaintiffs' Fourth Amendment right to be free from the government's search and seizure except upon probable cause and a warrant issued by a magistrate.

7.3.   Defendants' malicious and deliberate interference with the clearly established requirements of the Fourth Amendment violates the law.  Defendants have disregarded the Constitution of the United States of America and by their conduct, policy, practice and custom have violated the fundamental rights of all Americans – the right of privacy and the right to the sanctity of their home and the right to be free from warrantless searches of the home. The right to be free from the government's search and seizure without a warrant is a fundamental right protected by the Fourth Amendment of Constitution.

7.4.   Defendants seizure of JW, JW and JW without a court order, a warrant, or exigent circumstances violates the Fourth Amendment.

7.5.   Defendants entry into the Wernecke home on June 1, 2005 without a court order or warrant and search of the home violates the Fourth Amendment.

7.6.    The law applicable to these rights was clearly established in 2005 when the Defendants acted in violation of the law.

7.7.   Defendants had fair notice that their conduct as described herein was a violation of the law in 2005.

7.9.    No reasonable official would violate clearly established law.

29

7.10.   The moving force behind Defendants' violation of the Fourth Amendment was the policies, practices, customs and usage of the Defendants.

## VIII.

### 42 U.S.C. § 1983

8.1.  Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

8.2.  The actions of the Defendants violate the rights of the Plaintiffs as guaranteed to Plaintiffs' by the United States Constitution and, are, further, policies, practices, customs, usages, rules, procedures, and conduct which have effectively denied to the Plaintiffs a constitutionally protected right which is in violation of 42 U.S.C. § 1983.

8.3.  The policies, customs, usages, rules, procedures, and practices of the Defendants, as alleged herein, violate 42 U.S.C. §1983 because they have denied Plaintiffs a right, privilege or immunity protected by the Constitution of the United States and the laws of the United States.

8.4.  Defendants are public officials who violated 42 U.S.C. §1983 by their conduct described herein because they denied to the Plaintiffs a right, privilege or immunity protected by the laws of the United States Government and the

30

Constitution of the United States, as alleged herein and the laws of the State of Texas.

8.5.    Because of these violations of these constitutionally guaranteed rights, Plaintiffs seek a Declaration from the Court, pursuant to 42 U.S.C. § 1983, that the policy, practice, custom, usages, rules, procedures and conduct of the Defendants is unconstitutional and an injunction prohibiting such illegal acts in the future.

8.6. Plaintiffs additionally seeks actual, nominal and punitive damages within the jurisdictional limits of this Court for the Defendants' violation of this law.

## IX.

## <u>DECLARATORY ACTION RELIEF</u>

9.1.  Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

9.2.  Plaintiffs seek a Declaration from the court that the policies, practices, customs, usages, rules, procedures and conduct of the Defendants violate the Constitutional and statutory rights of the Plaintiffs as alleged herein on their face as applied.

## X.

31

## RULE 65 INJUNCTION

10.1.     Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

10.2.     In accordance with Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs seek a preliminary and permanent injunction prohibiting the Defendants from engaging in conduct in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution, and specifically prohibiting the Defendants from adopting, implementing, or enforcing a policy interfering with Plaintiffs' right to family integrity.

10.3.     Plaintiffs seek a permanent injunction against the Defendants to compel the Defendants to follow the law of the U. S. Constitution, U.S. law and statutes, and laws of the State of Texas.

## XI.

## NOMINAL DAMAGES

11.1.     Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

11.2     Plaintiffs seek nominal damages from the Defendants for their unconstitutional and unlawful conduct as described herein.

32

## XII.

## <u>PUNITIVE DAMAGES</u>

12.1.      Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

12.2.        Plaintiffs seek the recovery of punitive damages from the individual Defendants (not the DFPS or Nueces County only because such damages are barred as a matter of law) for the individual Defendants' unconstitutional and unlawful conduct as described herein.

12.3.        The individual Defendants are not entitled to qualified immunity because the individual Defendants had "fair notice" that their actions and conduct violated clearly established law at the time the Defendants took the actions in question.

12.4.        The individual Defendants acted "recklessly" and with a "callous indifference" to the lawful and Constitutionally protected rights of the Plaintiffs.

12.5.      Plaintiffs will seek punitive damages from the individual Defendants severally for each of the individual

Defendants reckless and callously indifferent conduct as alleged herein.

## XIII.

## ACTUAL DAMAGES

13.1.    Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

13.2.    Plaintiffs seek actual damages from the Defendants for the Defendants' violation of the law.

13.3.    The amount of actual damages sought are within the jurisdiction of this Court.

## XIV.

## ATTORNEYS FEES

14.1.    Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation in the preceding paragraphs numbered I. through V. of this Complaint.

14.2.    Plaintiffs, as the prevailing party, will seek an award of attorneys fees against the Defendants, jointly and severally, pursuant to 42 U.S.C. §1988 and the laws of the United States.

## XV.

### JURY TRIAL

15.1.        Plaintiffs demand a jury trial on all issues triable to a jury.

## XXII.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request and pray that the Court grant the Plaintiffs the following relief:

1.      That Plaintiffs be awarded nominal damages;

2.      That Plaintiffs be awarded punitive damages against the individual Defendants,

3.      That Plaintiffs be awarded actual damages.

4.      That Plaintiffs be awarded Plaintiffs' costs and reasonable attorney's fees in this court and all other courts.

5.      That the Judgment of Court awarding the relief requested by the Plaintiffs against the Defendants be jointly and severally awarded.

6.      That Plaintiffs be awarded pre-judgment and post-judgment interest, to the extent permitted at law.

7.      That the Court enter an Declaratory Judgment declaring that the Defendants' conduct and actions:

a.      Violate clearly established legal rights of the Plaintiffs;

b.   Violate laws which Defendant had fair notice of;

c.   Violate the Fourth Amendment;

d.   Violate the Fourteenth Amendment Due Process Clause;

e.   Violate 42 U.S.C. §1983;

i.   Were taken in furtherance of and pursuant to policies adapted by the DFPS or Nueces County;

j.   By the PISD in adapting the policies are facially and as applied unlawful;

k.   By the individual Defendants were "reckless";

l.   By the individual Defendants were done with "callous indifference" to Plaintiffs' legal rights;

m.   Were applied in an unlawful manner;

8.   That the court issue an injunction enjoining the unlawful actions and policies of the Defendants.

9.   That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's permanent injunctive order and review Defendants' compliance with the Court's permanent injunction; and,

10.   That Plaintiffs have such other and further relief, both at law and in equity, as the Court deems just and right.

Respectfully submitted,

36

By:/S/ Wm. Charles Bundren

      Wm.  Charles Bundren, Esq.

      Attorney-in-Charge

      State Bar No.  03343200

      USDC Southern Dist. # 13403

      5300 Town & Country Blvd.

      Suite 110

      Frisco, Texas 75034

      Telephone:  972.624.5338

      Facsimile:   972.624.5340

      E-mail: cbundren@aol.com

      ATTORNEY FOR PLAINTIFFS